UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COREY S. FRASCA,

    Plaintiff,

v.                               Case No.: 8:16-cv-1967-T-33JSS

FLORIDA DEPARTMENT OF
CORRECTIONS, UNNAMED GUARD,
individually, and JULIE
JONES, as Secretary of the
Florida Department of
Corrections, in her official
Capacity,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Florida Department of Corrections, unnamed guard, and Julie Jones's Motion to Transfer Venue (Doc. # 18), filed on November 2, 2016. Plaintiff Corey Frasca filed a response in opposition (Doc. # 20) on November 16, 2016. For the reasons that follow, the Court grants the Motion.

**I.  Background**

Frasca initiated this action in this Court on July 7, 2016, alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983, as well as including common law claims for negligence, vicarious

1

liability, and intentional infliction of emotional distress (Doc. # 1). Frasca asserts that, while he was an inmate in the custody of the Florida Department of Corrections (Department), the Department, and its employees, including the unnamed guard, failed to provide him with a bottom bunk despite Frasca's medical pass, which stated that he should be assigned to a bottom bunk. (Id. at ¶¶ 12-15). Frasca suffers from a seizure disorder and required a bottom bunk to prevent injuries if he should fall from his bunk during a seizure. (Id. at ¶¶ 11-14, 20).

While in the Department's custody, Frasca was housed at three different institutions: Florida State Prison, Gulf Correctional Institute, and Reception Medical Center. (Id. at ¶¶ 10, 14, 21). Frasca suffered three seizures and resulting falls while staying at Gulf Correctional Institute and Reception Medical Center. (Id. at ¶¶ 16, 19, 21).

While assigned to a top bunk at Reception Medical Center, Frasca twice fell from his bunk during seizures in November of 2012 and January of 2013. Before his second fall, Frasca asked the Defendant unnamed guard to reassign him to a bottom bunk, as his medical pass suggested. (Id. at ¶ 15). Although the unnamed guard told Frasca that he would be moved, Frasca was never reassigned to a bottom bunk, even after being

2

treated for the injuries he incurred in his second fall. (Id. at ¶¶ 15, 20). Reception Medical Center is located in the Jacksonville Division of the Middle District of Florida. (Doc. # 18 at ¶ 12).

Following Frasca's second fall at Reception Medical Center, Frasca was transferred to Gulf Correctional Institute, where he fell during another seizure, causing numerous injuries, on January 28, 2013. (Doc. # 1 at ¶¶ 21-22). Gulf Correctional Institute is located in the Panama Division of the Northern District of Florida. (Doc. # 18 at ¶ 13).

On November 2, 2016, Defendants filed a Motion requesting that the Court transfer this action to the Jacksonville Division of the Middle District of Florida. (Doc. # 18). Frasca responded on November 16, 2016. (Doc. # 20). The Motion is now ripe for the Court's review.

**II. Discussion**

Pursuant to 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "To transfer an action under [S]ection 1404(a) the

3

following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." i9 Sports Corp. v. Cannova, No. 8:10-cv-803-T-33TGW, 2010 WL 4595666, at *3 (M.D. Fla. Nov. 3, 2010)(citation omitted). "Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice." Id.

When considering a motion to transfer venue, the Eleventh Circuit has outlined the following factors to be considered:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Testa v. Grossman, No. 5:15-cv-321-OC-30PRL, 2015 WL 6153743, at *2 (M.D. Fla. Oct. 19, 2015)(citing Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). The Court addresses the factors below.

### A. Frasca's Choice of Forum

"In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show the balance of the conveniences is 'strongly in favor' of the transfer." Id. (quoting Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999)). Although the case could have been brought in the Jacksonville Division, where some of the events occurred, Frasca has chosen to litigate in the Tampa Division of this District and notes that he currently resides in Tampa, Florida. (Doc. # 20 at 2). This factor weighs against transfer; however, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." Garay v. BRK Elecs, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991).

Therefore, Frasca's choice of forum is due less deference than if the events underlying his action had occurred in the Tampa Division. Cf. Delorenzo v. HP Enter. Servs., LLC, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015)("[T]he operative facts underlying the cause of action occurred primarily in the District of Columbia. Accordingly, this factor only slightly favors retention."); Osgood v. Discount Auto Parts, LLC, 981 F. Supp. 2d 1259, 1267 (S.D. Fla.

5

2013)(noting in slip and fall case that the plaintiff's choice of forum "does not command a lot of deference" because "the accident occurred in the [proposed transfer district]"); Gonzalez v. Pirelli Tire, LLC, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008)("Here, it appears to the Court that Plaintiff's choice of forum is entitled to less than normal deference because the incident underlying the action occurred in the Middle District of Florida."). This factor only slightly weighs against transfer.

### B. Convenience of Parties and Witnesses

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis [of] whether a transfer should be granted." Osgood, 981 F. Supp. 2d at 1264 (quoting Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)); see also Testa v. Grossman, No. 5:15-cv-321-Oc-30PRL, 2015 WL 6153743, at *2 (M.D. Fla. Oct. 19, 2015)(noting that convenience for witnesses is considered the most important factor). However, "[w]hen weighing the convenience of witnesses, 'a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transfer forum. Instead, the court must qualitatively evaluate the materiality of the

6

testimony that the witness may provide.'" Osgood, 981 F. Supp. 2d at 1264 (citation omitted).

Defendants assert that "almost all of the parties and non-party witnesses believed to have knowledge of [Frasca's] claims are located in Union County (located in the Jacksonville Division) and/or Gulf County (located in the Northern District, Panama Division)." (Doc. # 18 at 4). Defendant unnamed guard, who has yet to be identified, was an employee of the Reception Medical Center, within the Jacksonville Division. (Doc. # 1 at ¶¶ 14-15). Thus, the alleged violation of Frasca's rights by the unnamed guard occurred at Reception Medical Center, making the unnamed guard's testimony significant regarding liability. (Id. at ¶¶ 15, 65).

Additionally, Defendants identify a large number of possible witnesses at the institutions in which Frasca was housed. Although Defendants list many medical staff members from the Reception Medical Center and Gulf Correctional Institute as potential witnesses, the sheer number of potential witnesses itself does not influence the convenience factor. See Sapa Precision Tubing Rockledge, LLC v. Tex-Mmex Recycling, LLC, No. 6:16-cv-22-Orl-31KRS, 2016 WL 3917491, at *8 ("Merely mentioning the geographic locations and numbers

7

of the witnesses is not enough to show an inconvenience of the sort that would warrant transfer."). However, Defendants demonstrate that the witnesses have information related to the operative facts of the case — at least some of the listed medical staff treated Frasca for his injuries immediately after his fall and will provide important testimony regarding the accidents. The medical staff who immediately treated Frasca after his seizure and fall at the Reception Medical Center are located in the Jacksonville Division. (Doc. # 18 at 5). The medical staff who treated Frasca's immediate injuries at Gulf Correctional Institute are located within the Panama Division of the Northern District of Florida, which is located closer to Jacksonville than Tampa, and thus is more convenient for any witnesses who must travel for their depositions. (Id.).

Frasca argues that the case should remain in the Tampa Division because he is located in Tampa, as are his physicians. (Doc. # 20 at 2-3). Frasca lists nineteen medical witnesses, the majority of whom are located in the Tampa Division. (Doc. # 18-1). As Defendants note, it appears that most of these witnesses treated Frasca for his injuries after Frasca was released from the Department's custody. (Doc. # 18 at 5). Thus, they do not address the issue of liability. Cf.

8

Osgood, 981 F. Supp. 2d at 1264 (transferring case and noting that "Plaintiff did not identify any eyewitness who are located in [this district], and all eyewitnesses Defendant listed are located in the [other district].").

Furthermore, the sheer number of medical witnesses itself does not increase the balance of this factor in Frasca's favor. The testimony of all medical witnesses would likely be cumulative, and not every witness would likely testify at trial. See Gonzalez, 2008 WL 516847, at *3 (noting that "it is questionable whether the trial court would allow the calling of eight treating physicians regarding Plaintiff's injuries as their testimony would likely be cumulative" in weighing the convenience of witnesses); see also Osgood, 981 F. Supp. 2d at 1264 ("While both liability and damages witnesses are important, live testimony of multiple eyewitnesses is less likely to be cumulative than the testimony of Plaintiff's proposed five to eleven physicians."). The Court finds that this factor weighs heavily in favor of transfer.

### C. Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

Much of the documentation regarding the operative facts of the case, including Frasca's bunk assignments, lower bunk

pass, and seizure assessments, are located at or near Reception Medical Center and Gulf Correctional Institute. (Doc. # 18 at 6; Doc. # 20 at 4-5). While the electronic transfer of documents reduces the importance of this factor, the Court finds that, "due to the potential, unknown costs of transferring materials electronically, this factor still weighs slightly in favor of transfer." Testa, 2015 WL 6153743, at *3.

### D. Locus of Operative Facts

Frasca fails to show that any "relevant acts or omissions took place specifically" in this Division. Fla. v. Jackson, No. 3:10-cv-503/RV/MD, 2011 WL 679556, at *2 (N.D. Fla. Feb. 15, 2011). The primary locus of operative facts is in the Jacksonville Division of the Middle District of Florida, where Reception Medical Center is located, two of Frasca's falls occurred, and the unnamed guard is employed. The other site at which Frasca was housed and injured is Gulf Correctional Institute, which is within the Northern District of Florida and closer to the Jacksonville Division than the Tampa Division.

Thus, this factor weighs heavily in favor of transfer. See Osgood, 981 F. Supp. 2d at 1265 ("The locus of operative facts weighs heavily in favor of transfer because the accident

occurred in the [other district]."); see also Delorenzo, 79 F. Supp. 3d at 1282 (noting that this factor "distinctly favor[ed] transfer" because no operative facts were connected to the district in which the case was filed).

**E.      Availability of Compulsory Process for Witnesses**

Regarding the availability of compulsory process, Federal Rule of Civil Procedure 45(c)(1) states,

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>     (i)  is a party or a party's officer; or
>     (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1).

Defendants "believe[] that most of the non-party witnesses are located more than 100 miles from the Tampa Division" but that the "distance between [Reception Medical Center] and Jacksonville is only about 57 miles." (Doc. # 18 at 6). Defendants assert that many witnesses "will incur substantial expense in traveling to Tampa to attend the trial of this matter, and therefore, may potentially be exempted from a subpoena." (Id. at 7). Therefore, this factor weighs in favor of transfer. Cf. Testa, 2015 WL 6153743, at *3

11

(finding this factor weighed in favor of transfer because "most of the key witnesses are located in New York, [so] a New York court would be better positioned to institute compulsory process").

### E. Relative Means of the Parties

Frasca contends that he does not have the financial resources to travel to Jacksonville. Frasca is disabled and states that "his only source of income is social security disability benefits." (Doc. # 20 at 2). However, there is no requirement that Frasca personally participate in the depositions of witnesses, which would require his travel to their locations, nor is the event of trial certain. See Delorenzo, 79 F. Supp. 3d at 1284 (finding this factor only slightly favored retention because "if [plaintiff] wishes to personally participate in the deposition of witnesses, she must travel [to other districts], regardless of the district in which the action pends" and "[t]he transfer will inconvenience [plaintiff] only in the event of trial and only if she testifies").

While Frasca's counsel is located in Tampa and would incur costs to travel to Jacksonville, the "convenience of the parties' counsel is given little or no weight in the

convenience analysis." Id. (citation omitted). Therefore, this factor only slightly favors retention.

**F.   Familiarity with Governing Law**

The parties acknowledge that there is no difference in familiarity with the applicable Florida state and federal law to be applied in this case between the Tampa Division and the Jacksonville Division of the Middle District of Florida. (Doc. # 18 at 7; Doc. # 20 at 5). Therefore, this factor is neutral.

**G.   Trial Efficiency and the Interests of Justice**

The Court must consider whether any other problems make trial of the case in the proposed transfer forum easy, expeditious, and inexpensive. See Garay, 755 F. Supp. at 1013 ("The interests of justice require that a court consider 'the forum in which judicial resources could most efficiently be utilized and place in which trial would be most easy, expeditious, and inexpensive.'")(citation omitted).

As the primary locus of operative facts and the majority of witnesses regarding liability are located in the Jacksonville Division, holding the trial in Jacksonville will be more efficient. Cf. Osgood, 981 F. Supp. 2d at 1267 ("This factor weighs in favor of transfer because the majority of the witnesses are located in the Middle District, and holding

13

trial in Jacksonville will be more efficient."). Therefore, this factor weighs in favor of transfer.

### III. Conclusion

Considering the totality of the circumstances, the Court finds that the factors weigh heavily in favor of transfer from the Tampa Division to the Jacksonville Division of the Middle District of Florida.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Transfer Venue (Doc. # 18) is **GRANTED** to the extent that the Court transfers this case to the Jacksonville Division of the United States District Court for the Middle District of Florida.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of November, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

14